WESTERN DISTRICT OF LOUISIANA
RECEIVED LAFAYETTE

SEP 15 2014

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

International Environmental             Civil Action No. 14-00601
Services, Inc., et al

                                                                Judge Richard T. Haik, Sr.
versus

                                                       Magistrate Judge C. Michael Hill

Maxum Industries, LLC, et al

## MEMORANDUM ORDER

Before the Court is a Motion To Dismiss Or For Partial Dismissal On Behalf Of Maxum Industries, LLC ("Industries"), Maxum Environmental Services, LLC ("Services"), Maxum Resources, LLC ("Resources"), And Broc J. Segura (sometimes referred to collectively as "Maxum") Pursuant to Rule 12(b)(3) and Rule 12(b)(6) [Rec. Doc. 14], Plaintiffs, International Environmental Services, Inc. ("IES") and Environmental Management, Inc.'s ("EM") (sometimes collectively referred to as "Plaintiffs"), Memorandum In Opposition To Defendants' Motion To Dismiss Or For Partial Dismissal [Rec. Doc. 17], Defendants' Reply Memorandum [Rec. Doc. 21] and Plaintiffs' Sur-reply [Rec. Doc. 18]. For the reasons that follow, Maxum's Motion will be granted in part and denied in part.

### *Factual Background*

Plaintiffs filed this Complaint seeking damages for breach of contracts and tortious interference with contractual relationships, as well as for quantum meruit, unjust enrichment, detrimental reliance and state statutory law. *R. 1*. Plaintiffs' Complaint, *R. 1*, provides the following factual background.

On November 21, 2006, Plaintiff, IES, and William Rippetoe entered into a written

Consulting Agreement ("Agreement") in which Rippetoe agreed to serve as a consultant to IES for a term of three (3) years and IES agreed to hold an option to purchase Rippetoe's Intellectual Property[1].

In late 2010 or early 2011, Plaintiffs', IES and EM, management personnel were informed by Broc J. Segura, Maxum's managing-member, of Maxum's interest in using Rippetoe's Intellectual Property in its business of soil and water remediation activities.

On February 10, 2011, Plaintiffs and EM entered into a written Non-Circumvention Agreement which prohibited, for a five (5) year period, either party from contacting certain third parties. The Non-Circumvention Agreement was intended to ensure the protection of Plaintiffs' relationship with Rippetoe and the Intellectual Property, and to protect Maxum's relationships with its customers and other third parties. Thereafter, Plaintiffs provided Rippetoe's Intellectual Property to Maxum.

On May 17, 2011, IES and Rippetoe entered into a written First Amendment to Consulting Agreement ("Amended Agreement") which confirmed that Rippetoe had been paid $782,500 pursuant to the terms of the Agreement which was extended to May 31, 2016 or until an additional one million dollars ($1,000,000) had been paid by IES to Rippetoe.

On June 28, 2011, IES and Maxum entered into a License Agreement allowing IES to license the Intellectual Property to Maxum for business use. In the License Agreement,

---

[1] Rippetoe owned certain proprietary formulas and methodologies for processes utilized in soil and water remediation work which are not generally known to the public and which constitute proprietary trade secrets (hereinafter referred to as "Intellectual Property").

Maxum agreed to pay IES royalty payments from income produced by the utilization of the Intellectual Property. In the event IES defaulted in making the payments, the License Agreement allowed Rippetoe to direct that payments due IES from Maxum be made directly to him.

Plaintiff, EM, agreed to perform remediation work as a subcontractor on projects on which Maxum was serving as the general contractor, using Rippetoe's services and the Intellectual Property. In early December, 2011, Maxum defaulted on the payment obligations to IES under the terms of the License Agreement. Before and after the default, Plaintiffs', IES and EM, continued to perform subcontracting work for Maxum. Plaintiffs allege they expected that, even though Maxum had defaulted on its payment obligations to IES under the terms of the License Agreement, Plaintiffs would continue to perform subcontracting work for Maxum and would renegotiate the terms of the License Agreement to include terms which Maxum could perform.

On December 27, 2011, Rippetoe provided IES with a written "Letter of Default (Termination)" wherein Rippetoe notified IES that it was terminated as of that date, and that any royalty or other payments due IES from Maxum should be directly paid to Rippetoe. Plaintiffs dispute that IES was ever in default of the terms of the Amended Consulting Agreement, alleging that its failure to pay Rippetoe the monthly consulting fee was due to Maxum's failure to pay IES pursuant to the terms of the License Agreement. Plaintiffs further allege that Rippetoe and Maxum have entered into agreements that call for Rippetoe to provide consulting services directly to Maxum, utilizing the Intellectual Property, in violation

of the terms of the Amended Consulting Agreement between IES and Rippetoe, as well as the terms of the Non-Circumvention Agreement and License Agreement between IES and Maxum.

Plaintiffs allege the following causes of action: (1) Breach of the Amended Consulting Agreement; (2) Breach of the Non-Circumvention Agreement; (3) Breach of the License Agreement; (4) Detrimental Reliance; (5) Breach of Services Agreements; (6) Quantum Meruit; (7) Unjust Enrichment; (8) Tortious Interference with Contractual Relationships and Conspiracy.

Defendants filed the motion at bar asserting Plaintiffs' Complaint should be dismissed under Rule 12(b)(3) in light of the forum-selection clauses in the Non-Circumvention Agreement and the License Agreement. Defendants assert in the alternative a motion under 12(b)(6) contending that Defendants Resources and Segura should be dismissed as they are not named as parties to the Agreements. They further assert under 12(b)(6) that Plaintiffs' failed to state a cause of action for tortious interference with contractual relationships, for conspiring to tortiously interfere with contractual relationships and for a claim under the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA").

*Analysis*

*1. Rule 12(b)(3) - Improper venue Due to Forum-Selection Provisions*

Defendants contend that the Non-Circumvention Agreement and the License Agreement each contain valid forum selection clauses that require the Court to dismiss this action in order for plaintiffs to re-file in Louisiana state court. Plaintiffs argue that the language in both

agreements is merely permissive and Defendants' motion under Rule 12(b)(3) should be denied.

The Non-Circumvention Agreement provides in pertinent part:

> In the event that any party fails to honor the obligations under this NON-CIRCUMVENTION AGREEMENT, the parties hereto consent, stipulate, and agree, that in the event a dispute arises as to the terms and/or enforcement of this agreement, the courts of the state of Louisiana shall have jurisdiction over the subject matter as well as in personam, in rem, and in quasi rem-jurisdiction over the parties to this the federal courts.

*R. 17, Exh. A.* The venue provision in the License Agreement provides,

> <u>Venue</u>. For purposes of legal action under this Agreement, both parties consent to the service of process and venue in the Fifteenth Judicial District Court in and for the Parish of Lafayette, Louisiana.

*R. 17, Exh. B.*

Parties to a contract are permitted to select venue via a forum selection clause. *See e.g., City of New Orleans v. Mun. Admin. Servs., Inc.*, 376 F.3d 501 (5th Cir.2004). In order to find whether a forum selection clause requires the parties to litigate in the named forum, a court must first determine whether the forum selection clause is mandatory or permissive. *Caldas & Sons, Inc. v. Willingham*, 17 F.3d 123, 127 (5th Cir.1994). Where a forum selection clause is ambiguous and subject to more than one reasonable interpretation, the clause is properly construed as permissive. *Id.* If the clause is mandatory, the court then determines whether the clause is enforceable. *Id.* Mandatory forum selection clauses have "express language limiting the action to the courts of a specific locale which is clear, unequivocal and mandatory." *Id.* at 128. "On the other hand, a permissive forum selection clause authorizes jurisdiction or

venue in a selected forum, but does not prohibit litigation elsewhere." *Bentley v. Mutual Benefits Corp.*, 237 F.Supp.2d 699, 701 (S.D.Miss.2002)[2] (citing *Caldas & Sons, Inc.* at 127-128). The Fifth Circuit has explained:

> A party's consent to jurisdiction in one forum does not necessarily waive its right to have an action heard in another. For a forum selection clause to be exclusive, it must go beyond establishing that a particular forum will have jurisdiction and must clearly demonstrate the parties' intent to make that jurisdiction exclusive. It is important to distinguish between jurisdiction and venue when interpreting such clauses. Although it is not necessary for such a clause to use the word "venue" or "forum," it must do more than establish that one forum will have jurisdiction.

*City of New Orleans v. Municipal Administrative Services, Inc.*, 376 F.3d 501, 504 (5th Cir.2004).

The Court finds that the language in the Non-Circumvention Agreement, "the courts of the state of Louisiana shall have jurisdiction ... over the parties to this the federal courts," is ambiguous, making it permissive rather than mandatory at this stage in the litigation. *See Pratt Paper (LA), L.L.C. v. JLM Advanced Technical Services*, 2013 WL 395815 (W.D.La.,2013). As to the License Agreement, the language merely states that the parties consent to service and venue in the Fifteenth Judicial District Court in Lafayette, Louisiana. It fails to use terms such as "exclusive," "sole," or "only" and does not indicate that the parties' consent to the Fifteenth Judicial District Court is mandatory by using a term such as "shall." Ultimately, the clause at

---

[2] In *Bentley*, the court held that a clause providing "[t]his Agreement shall be construed under the laws of Florida and the parties stipulate to venue in Broward County," was permissive. *Bentley*, 237 F.Supp.2d at 701. The Court reasoned that the parties had merely agreed to a Broward County venue without excluding all other venues, and therefore the clause was insufficient to render the forum selection clause mandatory. *Id.* at 702.

issue specifies one court but does not foreclose the possibility that other courts may also have jurisdiction. The Court therefore finds that the License Agreement forum selection clause is also permissive.

## 2. *Rule 12(b)(6) Motion to Dismiss*

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Such a motion is rarely granted because it is viewed with disfavor. *See Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir.1997). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)(citing Fed.R.Civ.P. 8). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully- harmed-me accusation." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In considering a Rule 12(b)(6) motion, the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *See Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464 (5th Cir.2004).

### *I. Single Business Entity*

Defendants contend that because plaintiffs did not allege the existence of a contractual relationship with either Segura or Resources, plaintiffs have failed to state a claim against them and they should be dismissed under Rule 12(b)(6). Plaintiffs argue that non-signatories,

Segura and Resources, should remain in this suit based on plaintiffs' alleged breach of contract claims against Maxum under the single business entity theory of liability.

Under Louisiana law, the single business entity doctrine is invoked to render one corporation responsible for the liabilities of the other. Implicit in the single business entity doctrine is the idea that seemingly distinct corporations are in fact acting in concert to achieve certain goals. *Tanner Companies, Inc. v. Reliable Onshore Services Co., LLC*, 2008 WL 148073, 7 (E.D.La.,2008); *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 320-21 (4th Cir.1988). A corporation's veil may be pierced to extend liability for another's debts to the corporation. This exception, called the "single business entity," occurs when a corporation is found to be the "alter ego, agent, tool or instrumentality of another corporation." *Dishon v. Ponthie*, 918 So.2d 1132, 1135 (La.App. 3 Cir.,2005) (citing *Green v. Champion Insurance Co.*, 577 So.2d 249, 257 (La.App. 1 Cir.,1991)). In *Green*, the court set forth 18 factors to consider when determining whether a group of entities constitute a single business entity which "are similar to factors that have been used in Louisiana 'piercing the veil' cases." *Green*, 577 So.2d at 258. While plaintiffs list the 18 factors in their opposition to defendants' motion, the Complaint contains no specific allegations as to Maxum's liability under the single business entity theory. Accordingly, the Court will allow plaintiffs to amend their complaint in that regard.

### ii. Tortious Interference With Contract in Louisiana

Plaintiff allege a claim of tortious interference of contractual relations as well as a conspiracy to tortiously interfere against each of the defendants. Defendants assert that

Plaintiffs cannot bring this cause of action to impose liability on Maxum's manager, Segura, because he is a manager of an LLC rather than a "corporate officer." Plaintiffs argue that because the duties Segura, as the manager, owes to the LLC are analogous to the duties a corporate officer owes to the corporation, the Court should find that a cause of action exists for tortious interference with contractual relationships against Maxum. Defendants alternatively assert that the claims for tortious interference were known to plaintiffs more than one year before this action was filed, and therefore, should be dismissed. Plaintiffs argue that because the conduct causing their damages continues and has not abated, their claims are viable under the Louisiana continuing tort doctrine.

In *9 to 5 Fashions, Inc. v. Spurney*, 538 So.2d 228 (La.1989), the Supreme Court of Louisiana recognized the duty on the part of a corporate officer to refrain from intentional interference with contractual relations between his corporation and other persons, unless there is a reasonable justification for his conduct. The Louisiana Supreme Court separated the elements for actions against a corporate officer for intentional and unjustified interference with contractual relations as follows:

> (1) the existence of a contract or a legally protected interest between the plaintiff and the corporation; (2) the corporate officer's knowledge of the contract; (3) the officer's intentional inducement or causation of the corporation to breach the contract or his intentional rendition of its performance impossible or more burdensome; (4) absence of justification on the part of the officer; (5) causation of damages to the plaintiff by the breach of contract or difficulty of its performance brought about by the officer.

*Id.* at 234.

Since issuing its decision in *9 to 5 Fashions, Inc.*, the Louisiana Supreme Court has

offered little guidance regarding the proper scope of its decision except to note its determination to "proceed with caution in expanding [the tortious interference] cause of action." *Great Sw. Fire Ins. Co. v. CNA Ins. Cos.*, 557 So.2d 966, 969 (La.1990). The Louisiana courts of appeal have, however, provided some implicit indications of the direction the court may take. For example, in *Cowen v. Steiner*, the Louisiana Third Circuit held that a plaintiff could state a tortious interference claim against the medical director of a hospital who was not a corporate officer "because of the corporate context of the allegations and because it appears from the pleadings that [the medical director] had the power or influence that a corporate officer might have." 689 So.2d 516, 518, 521 (La.App. 3d Cir.1997). In other words, the appellate court attempted to extend the tort to circumstances which were <u>analogous</u> to a suit against a private corporate officer. The Louisiana Supreme Court, without written reasons, reversed the judgment of the appellate court and reinstated the judgment of the trial court dismissing the plaintiff's tortious interference claim. 701 So.2d 140 (La.1997).

Thereafter, the Third Circuit declined to extend the doctrine beyond the limitations set forth in *9 to 5*. *See, e.g., Technical Control Systems, Inc. v. Green*, 809 So.2d 1204, 1209 (La.App. 3 Cir. 2002) (cases cited therein). The Louisiana Fourth Circuit has followed the Third Circuit's course of retreating from an expansive view of *Spurney* to the more stringent view generally adopted by the remainder of Louisiana's appellate courts. *See, e.g.,Favrot v. Favrot*, 2011 WL 458708 (La.App. 4 Cir. 2011); *Neel v. Citrus Lands of Louisiana, Inc.*, 629 So.2d 1299 (La.App. 4 Cir.1993).

Following the state appeal courts, the federal courts have also taken a narrow approach

in interpreting *9 to 5*. *See, e.g., M & D Mineral Consultants LLC v. Wenti Li, et al.*, 2013 WL 883689 (W.D.La.)(no tortious interference with contract claim could be asserted against manager of limited liability company); *Harris Builders, L.L.C. v. URS Corp.*, 861 F.Supp.2d 746, 750–52 (E.D.La.2012)(general contractor on public contract could not assert tortious interference with contract claim against project's construction manager); *City of Alexandria v. Cleco Corp.*, 735 F.Supp.2d 448, 463 (W.D.La.2010)(cause of action not applicable to mayor and city attorney of a municipality); *Hibernia Community Development Corporation, Inc., v. U.S.E. Community Services Group, Inc.*, 166 F. Supp .2d 511, 514 (E.D.La.2001) (no cause of action against office manager who was not a corporate officer).

Recently, in *M & D Mineral Consultants LLC v. Wenti Li, et al.*, 2013 WL 883689 (W.D.La.,2013), Judge Walter considered a case in this court which was "on all fours with the case at bar" in that it raised the issue of whether a manager of a limited liability company can be held liable for intentional interference with contractual relations under Louisiana law. *R. 19-1, p.4*. The court found that nothing in the parties' briefs or the jurisprudence lead it "to believe that it should—or even could—expand the scope of Louisiana's cause of action for intentional interference with contractual relations to impose liability on a manager of an LLC." The court acknowledged the analogy between a manager of an LLC and a corporate officer, as Plaintiff urge in this case, but held that the claim "did not fall within the ambit of the narrowly drawn delictual action recognized in *9 to 5*." *Id. at \*4*.

Thus, this Court, charged with performing an *Erie*-guess is not persuaded that a claim exists against Maxum LLC, more particularly, Maxum, LLC's manager, for tortious

interference with contractual relations under Louisiana. As the Court finds that plaintiff's claims for tortious interference with contract must be dismissed, the Court need not address prescription as to these.

### *iii. Prescription*

Defendants assert that plaintiffs' cause of action under the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA") are prescribed. Plaintiffs argue that defendants have continued to breach the Non-Circumvention Agreement and the Licensing Agreement by entering into relationships with co-defendant Rippetoe to the exclusion of plaintiffs—"overt persistent, and ongoing acts" sufficient to trigger Louisiana's continuing tort doctrine.

LUTPA provides that an action brought under its sections "shall be prescribed by one year running from the time of the transaction or act which gave rise to this right of action." La.Rev.Stat. § 51:1409 (E). The act gives a right of action under section 1409 when the plaintiff "suffer[s] any ascertainable loss of money or moveable property." La. R.S. 51:1409A. Furthermore, the prescriptive period for a private action pursuant to LUTPA is preemptive. La. R.S. 51:1409 E. A preemptive period cannot be renounced, interrupted or suspended. La. C.C. art. 3461.

Louisiana law allows for continuing tort theory to apply in cases where there has been an ongoing violation of the law. *Reyes v. Julia Place Condominiums Homeowners Ass'n, Inc.*, 2014 WL 4104701, 2 (E.D.La.,2014) (citing *Crump v. Sabine River Auth.*, 737 So.2d 720, 728 (La.1999). Following a line of cases from Louisiana's First Circuit Court of Appeals, the

Fifth Circuit held that the continuing violation doctrine applies to the LUTPA peremptive period. *Tubos de Acero de Mex., S.A. v. Am. Int'l Inv. Corp.*, 292 F.3d 471, 482 (5th Cir.2002). The inquiry used in determining whether damage is caused by a continuous or a discontinuous operating cause for purposes of when prescription begins to run is essentially a conduct-based one, asking whether the tortfeasor perpetuates the injury through overt, persistent, and ongoing acts. *Hogg v. Chevron USA, Inc.*, 45 So.3d 991 (La. 2010).

LUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." La. R.S. 51:1405. "The elements of a cause of action under the LUTPA are: (1) an unfair or deceptive trade practice declared unlawful; (2) that impacts a consumer, business competitor[,] or other person to whom the statute grants a private right of action; (3) which has caused ascertainable loss." *Who Dat Yat LLC v. Who Dat ? Inc.*, 2011 WL 39043, at *3 (E.D.La. 2011). Plaintiffs' Complaint provides allegations sufficient to state a cause of action under LUTPA and that such conduct causing plaintiffs' damages has not abated.

### *Conclusion*

Based on the foregoing, Defendants' 12(b)(3) Motion will be denied. Defendants' 12(b)(6) Motion will be granted in part as to Plaintiffs' claims for tortious interference with contractual relationships and conspiracy to tortiously interfere with contractual relationships and denied in part as to the LUTPA claims, and Plaintiffs are to amend their Complaint to address "single business entity" liability as provided herein. Accordingly,

**IT IS ORDERED** that the Motion To Dismiss Or For Partial Dismissal On Behalf Of

Maxum Industries, LLC, Maxum Environmental Services, LLC, Maxum Resources, LLC, And Broc J. Segura Pursuant to Rule 12(b)(3) and Rule 12(b)(6) [Rec. Doc. 14] is **GRANTED IN PART** and plaintiff's claims for tortious interference with contractual relationships and conspiracy to tortiously interfere with contractual relationships are **DISMISSED WITH PREJUDICE**, and **DENIED IN PART** as to all other issues raised in the Motion, and directs Plaintiffs to file an **amended** complaint as to the single business entity claims within 30 days of the entry of this Order.

**THUS DONE AND SIGNED** this 12th day of September, 2014 at Lafayette, Louisiana.

_____
Richard T. Haik, Sr.
United States District Judge